Ruffin, C. J.
A sale by the master in a case of this kind is but a mode of sale by the parties themselves. It is not merely a sale by the law, in invito, of such interest as the party has or may have, in which the rule is, caveat emptor; but professes to be a sale of a particular estate, stated in the pleadings to be vested in the parties, and to be disposed of for the purpose of partition only. Therefore, if there be no such title, the purchaser has the same equity against being compelled to go on with his purchase, as if the contract had been made without the intervention of the court; for, in truth, the title has never been judicially passed on between persons contesting it. Hence, if a purchaser pays his money on a master’s sale and discovers a defect in the title, at any time before a conveyance executed, he may recover it back. Sugd. Vend, 345. Johnson v. Johnson. 3 Bos. & Pul. 162.
There is no question as to the want of title in this case. Although the estate of the parties to the partition cause was *352 stated to be afee simple in possession, yet it is but a life estate. It *s trae> they would be allowed to complete the title, if they could. But, that is seen to be impossible, for the limitations over are contingeni to persons not yet born, and it cannot be determined, who will be entitled to the fee in the premises, until the death of every one of these persons and twenty-one years afterwards — since the ultimate limitation is to the testator’s cousin Henry and his heirs, upon the event, that all his own children should die without leaving a child, that shall attain the age of twenty-one.
We are not prepared to say that it is material whether there be simply the defect of title pointed out, or whether there wag a deception intended by the parties to the suit upon that point. But we think that nothing less than such a fraud can be judicially inferred from the facts. It is expressly charged in the bill and is not controverted by four out of the six parties to the former suit; and the other two only answer to their belief of the motives of those who did manage the case. They state, indeed, a construction put on this will by the courts of South Carolina; but they have offered no evidence of the truth of that statement. We are very sure, they could offer none such, for the construction of the will is so clear, that no such respectable tribunal, as that mentioned by them, could have so held. Then there concur both the suggestio fulsi in the bill as to the title, and suppressio veri by withholding the will and by the omission of the defendants to file an answer or to make defence; and they constitute, upon legal principles, nothing less than a fraud. It is obvious, that the intention was, to get a decree without an oath being taken by any person ; and to obtain evidence to the assertion of a good title by presenting it to the public, with the apparent sanction of judicial authority.
The purchaser cannot, therefore, be compelled to complete the purchase, but the sale must be set aside.
This conclusion was not disputed at. the bar; but the controversy turned upon the effect of that declaration on the right to the purchase money. The plaintiff claims the whole of it; but both of the other parties deny his right to more than he *353 paid, though they dispute between themselves, which of them is entitled to the residue. We think, upon investigation, that neither Myers nor Brittain has the right to it, and, therefore, that it belongs to the plaintiff.
This question, it is to be remembered, arises in the court of equity, and it is, in the first instance, what equity have the Myers’to any part of this fund ? We think, that they have plainly none at all. Ordinarily, when the vendor can not make a good title and the contract is rescinded, the parties are put in statu quo. If'the vendor has paid no part of the purchase money, that is effected simply by declaring that the contract is rescinded. In such a case it was never heard, that the vendor had an equity against the vendee to say, “ you agreed to give me more for the land than it was worth, at the time of the sale — or rather it is now worth — and, therefore, you ought to pay me all the price agreed on beyond the present value of the land.” For the question is not one of compensation or damages, but of specific performance.— The purchaser agreed to give so much money for the land, if conveyed to him with a good title; and unless the vendor does that, the vendor can in equity get nothing from the other side, whatever might be the rule of law as to damages, if the vendee were to sue the vendor at law on his covenant to convey, or whatever may be the rule of equity as to compensation for a part of the land, for which a good title cannot be made, when the vendee is content to take a conveyance for the part to which the title is good. But when the vendee declines taking a conveyance, and the court holds that the title to the whole is defective, the contract is set aside, and the vendor can claim no part of the purchase money for any difference in value. The same equity, precisely, compels the vendor to payback such part of the purchase money, as he may have received. For the receipt of the purchase money makes no difference, unless the purchase has been completed by the vendee’s accepting a conveyance, or doing some other act which precludes him from asking for a good title or an enquiry into it. Then, it is apparent, that if Smith were out of the case, and Brittain and Myers alone were the parties, the *354 latter could have no equity against Brittain, as to any part of this money, whether it be considered as having been paid to Myers or still in Brittain’s hands, or in custodia curies. All sides agree, indeed, that the whole fund would be decreed to Brittain had he never sold to Smith. But Myers says, that Smith can recover no more from him than he, Smith, paid: that such would be the measure of damages at law, if the parties had respectively made deeds with warrant}-, and that equity must follow the law. It is to be observed, that, in setting up this claim, Myers necessarily excludes Brittain from any share of the money. He does so properly, upon the supposition that the case is to be considered analogous to the case of warranties at law; for Brittain, as the immediate vendee, could not recover from Myers on this warranty to himself, after his sale to Smith. Markland v. Crump 1 Dev. & Bat. 94. Then why is Brittain to be excluded from any share of this money, as contended for by Myers ? Certainly, because he assigned his whole interest in the subject matter to Smith. That is Myers’ argument. Now, does it not follow, if Brittain is to be excluded by Myers from this fund, because he has assigned it to Smith, that by that assignment Smith necessarily succeeds to it ? He would not bo Brittain’s assignee, unless he took all that Brittain could claim. The effect of the assignment in equity is, indeed, not precisely the same with conveyances at law. In equity the assignee stands absolutely in the place of his assignor, and it is the same, as if the contract had been originally made with the assignee, upon precisely the same terms as with the original parties. For example, if Myers could make a good title, the conveyance, as things stand, should be made by Myers directly to Smith in consideration, not of the sum paid by Smith to Brittain, but of $5,656, paid by Brittain to Myers, and then, even upon the rule of damages on warnnties established in Williams v. Bceman 2 Dev. 483, Smith would recover from Myers the whole price received by him. The rule of that case was much discussed in the argument and its incongruity with previous cases and with itself, as applied to different states of facts, was much in *355 sisted on ; and perhaps it may hereafter be found impossible to carry out the doctrine fully. But, at present, we do not disturb that case; for, as before said, this is not a question of damages at law, but it is purely an enquiry, what rule the court of equity has adopted, as to the purchase money, when the contract cannot be completed, and what effect the court gives to an assignment of an equity. Now, we have seen that Brittain would be entitled to the whole of this fund against Myers, and that he assigned his purchase to Smith. Does not that, as against Myers, put Smith in Brittain’s shoes ? Why not? Myers says, because he only paid $>3,800. Admit it; but that is nothing to Myers. Suppose he had paid nothing for it, but that Brittain had devised it to him or assigned it to him, as an advancement to a son. Could Myers contend that therefore he was to keep the whole purchase money, and, at the same time, not convey the land ? It would be monstrous, if it were so. There is no doubt, that Smith has all the rights of Brittain in the premises. He is his assignee, and as much entitled to specific performance by a conveyance of the land bought by him; and if he can not get that, which he claims, because Brittain could claim it — then he has a right to the money, as belonging to him, because it would have belonged to Briitain. Smith is not restricted to the sum paid by him. He stands in Brittain’s shoes, as to his liabilities; and he is therefore entitled to his privileges. Suppose Brittain had paid none of the purchase money; Smith would have been bound to pay the whole to Myers ; for the purchase of an equitable title takes it, subject to all prior equities. Winborn v. Gorrell 3 Dev. Eq. 117. King v. Lindsay, Id. 77. Here; indeed, Brittain has been in possession for three years or more; and there is no doubt that Smith must account for that to Myers. If he bears Brittan’s burdens, then _ he must be entitled to his advantages. As we have already said, it is nothing to Myers, how Brittain and Smith dealt. Suppose Smith had given Brittain $ 10,000 for his interest, yet he could have claimed from Myers only the sum which Brittain had paid ; and in like manner he is entitled to that, though he paid Brifi *356 tain less. Smith may not be entitled to recover from Brittain more than he paid him, or even any thing, and yet he is entitled to the whole from Myers ; for the latter is liable to no one an(j canno(: jn good conscience keep a sum of money, which by fraud, they obtained for land which they cannot convey.
This brings us to the question between Smith and Brittain. Now, we do not perceive any right remaining in Brittain, nor any ground whatever on which he can set up a claim for any part of the money. He assigned his whole interest to Smith, and put himself out of the case. It is plain, that Smith and Myers might deal with each other as they pleased, without consulting Brittain. If Smith chooses, he may now take a conveyance from the master, and then the mouey would belong to Myers. Or they two might take out the money and modify their contract as they choose. Now, that they could not do, if Brittain had an interest. Brittain’s claim is founded on the supposed hardship of his losing the money, which he paid, when his assignee does not get the land. But that is a hardship, which arises solely from his having agreed to give too much for the land, or its falling in his hands. It is not a hardship, growing out of a rule of equity, or for which any rule of equity furnishes a remedy. If he had given the land to his son, the latter, and not he, himself, would call for the money from Myers. It is simply the effect of an assignment, as sustained by the court of equity. As before observed, even if the court, instead of decreeing upon its own principles of specific performance, were to decide in analogy to the rule of law respecting warranties, Brittain could not recover one cent from Myers. Markland v. Crump.
Therefore, the money must either be recovered by Smith, or kept by Myers; and, between them, the equity is already disposed of. It is said, indeed, that the decree is, that the contract shall be set aside, and that the consequence of that is, that the parties are to be put in statu quo, by which Myers will keep the land, and each of the other parties take the money paid by him. But that goes plainly on a fallacy. The *357 contract for the sale of the land is not enforced, and, therefore, the vendor must give up the purchase money. But it is not" considered, that, in truth, it never was made; for, if so, there would be no ground for decreeing the repayment of the money received under it. Moreover, the assignment from Brittain to Smith, is not rescinded ; and while that stands, it excludes Brittain from all right in the premises, whatever may be the equities of the other parties between themselves. Indeed, the only necessity for making Brittain a party in this cause, was to have the assignment established against him, as Myers had a right to require should be done. And but for his claim to a part of the money, he would be entitled to his costs.
It is next said, that this bill ought not to be entertained, because all the objects of the plaintiff could have been attained by a petition in the first cause, and that there can be no decree in this cause to reverse the decree in that. The first part of the objection onlygoes to the costs of this suit, and is a good reason why the present plaintiff should not recover his costs. But we do not see, why the court may not decree, at the suit of this plaintiff against all the parties to the original suit, that they should, among themselves, take such steps in that suit, that the decree obtained therein by their fraud, declaring them to be owners in fee, and decreeing a sale of the land, should be reversed. But even if that cannot be done, and we do not think it necessary to decide, in this case, that it can ; there seems to be no objection to a decree against those parties, that they shall permit the present plaintiff to receive the money heretofore paid into court, in that cause, upon his agreeing, in court, to accept the same instead of a conveyance of the land, and that the orders may be set aside, whereby, the sale made by the master was confirmed, and he required to make a deed to the plaintiff. That far, the bill is not founded on any error in law in the first cause, but upon the mere fraud of the parties in that cause on the court, and on the plaintiff as a purchaser.